UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TINA B.,[1] <br><br>               Petitioner, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>             Respondent. | Case No. 1:21-cv-00203-BLW-CWD <br><br> **REPORT AND RECOMMENDATION** |

## INTRODUCTION

Petitioner filed this matter for judicial review of Respondent's denial of her application for disability insurance benefits and supplemental security income. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR). For the reasons set forth below, the Court will recommend that the decision of the Commissioner be reversed and remanded for further proceedings.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**REPORT AND RECOMMENDATION  - 1**

# BACKGROUND

On July 3, 2019, Petitioner protectively filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (AR 18.) She alleged a disability onset date of October 1, 2014, due to Sjogren syndrome, spinal stenosis, scleroderma, rheumatoid arthritis, and Raynaud's syndrome. (AR 62-63, 72-73.) Petitioner's application was denied upon initial review and on reconsideration. (AR 82-83.) A hearing was held before Administrative Law Judge (ALJ) Wynne O'Brien-Persons on September 17, 2020, during which the ALJ heard testimony from Petitioner and a vocational expert. (AR 34-59, 18-27.) At the hearing, Petitioner amended her alleged onset date to January 26, 2018. (AR 38-39.)

On October 15, 2020, the ALJ issued a written decision finding Petitioner was not under a disability from January 26, 2018, through the date of the decision, and therefore found Petitioner is not disabled. (AR 21-27.) In the decision, the ALJ found Petitioner suffers from the severe impairments of lumbar degenerative disc disease, Sjogren's Syndrome, and CREST syndrome. (AR 21.) However, the ALJ determined Petitioner retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404. 1567(b) and 416.967(b)[2] except that Petitioner could "occasionally stoop…frequently handle and finger with the bilateral upper extremities…[and] avoid

---

[2] Light work requires the ability to lift up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, and the ability to stand or walk, off and on, for a total of approximately 6 hours of an 8-hour workday. SSR 83-10. Sedentary work, on the other hand, requires the ability to lift no more than 10 pounds at a time, with periods of standing or walking totaling no more than 2 hours of an 8-hour workday, and sitting for a total of approximately 6 hours of an 8-hour workday. SSR 83-10.

concentrated exposure to cold weather." (AR 22.) The ALJ concluded at step four[3] that Petitioner was capable of performing her past work as a pharmaceutical operator, teacher aid, and case aid. (AR 26.)

Petitioner timely requested review by the Appeals Council, which denied her request on March 5, 2021. (AR 1 – 6.) Petitioner timely appealed this final decision to the Court on May 7, 2021. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time of her alleged disability onset date of January 26, 2018, Petitioner was forty-seven years of age, and she attained fifty years of age by the time the ALJ issued the written determination on October 15, 2020. (AR 15, 62, 72.) Petitioner completed high school, and she reported past work as an assistant manager, behavioral interventionist, and housekeeper. (AR 272.) At the September 17, 2020 hearing, Petitioner testified she was working part time, ten hours a week, two hours each day, as a housekeeper in a medical office, earning $12.50 per hour. (AR 43, 285.)

---

[3] For a summary of the process, *see Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) ("The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).").

**REPORT AND RECOMMENDATION - 3**

## ISSUES FOR REVIEW

1.      Whether the ALJ reasonably evaluated Petitioner's subjective symptom testimony
concerning her physical and mental impairments?

2.      Whether the ALJ reasonably evaluated the medical opinion evidence?

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal

error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874

F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*,

139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229 (1938)). This requires "more than a mere scintilla" of evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*,

759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and

the evidence that does not support, the ALJ's conclusion. *Id*.

If the ALJ's decision is based on a rational interpretation of conflicting evidence,

the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin*., 533

F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence

presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why

"significant probative evidence has been rejected." *Id*.

Petitioner's assignments of error challenge the ALJ's step four findings regarding

Petitioner's RFC. The Court finds Petitioner's arguments persuasive, as explained below.

**DISCUSSION**

At step four of the sequential evaluation, the ALJ is required to make factual findings regarding: (1) the claimant's RFC, (2) the physical and mental demands of the claimant's former employment, and (3) whether the claimant's RFC permits her to return to previous occupations. Social Security Ruling (SSR) 82–62, 1982 WL 31386 (1982).

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record." *Id. See also Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). When a claimant requests an administrative hearing, it is the duty of the ALJ to determine the claimant's RFC from the record. 20 C.F.R. § 404.1546(c). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity," and the ALJ's findings of RFC need not correspond precisely to any physician's findings. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir.2001). It is the claimant who bears the burden of establishing her RFC. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

Here, Petitioner contends there is insufficient evidence to support the ALJ'S finding that she can perform full time light work as defined in 20 C.F.R. § 404.1567(b) and SSR 83–10 without significant interruption from pain. The vocational expert testified that, if an individual with Petitioner's age, education, and the ALJ's RFC were further limited to lifting 10 pounds with a need to alternate sitting and standing every thirty minutes while on task, all past work would be precluded. (AR 57.) The vocational expert testified also that, if the individual was absent two or more days each month, all

competitive employment would be eliminated. (AR 58.) And last, the vocational expert testified that an individual who needed more than two 20-minute breaks each day would need an accommodation, which would not be allowed. (AR 58.)

## 1.    Subjective Symptom Testimony

The ALJ considered Petitioner's subjective symptom testimony concerning her physical impairments, finding her testimony did not substantiate her allegations of disabling limitations. The ALJ concluded that, although Petitioner's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other evidence in the record. (AR 25.) The ALJ cited the following reasons in support of her determination: (1) lack of objective medical evidence from January 2018 to August 2019 and corresponding normal physical examination findings; and (2) Petitioner's "robust activities of daily living during the relevant period," her statements to medical providers, and her testimony at the hearing. (AR 24-25.) Petitioner argues the ALJ's conclusion is not supported by substantial evidence in the record and is therefore erroneous.

### A.    Legal Standard

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo v.*

*Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons[4] for doing so. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

---

[4] Recently, the United States Court of Appeals for the Ninth Circuit explained in *Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020), that an ALJ must offer clear and convincing reasons, not mere "non-specific conclusions," and identify "which testimony [the ALJ] found not credible, and [explain] which evidence contradicted that testimony." *Id*. at 1277 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). This is so that the Court can meaningfully review the ALJ's decision. *Id*. In turn, the reasons for rejecting a claimant's testimony about her symptoms must be supported by "substantial evidence in the record as a whole." 42 U.S.C. § 405(g). In other words, the Court should be able to review the portions of the record cited in support of the ALJ's reasons, and determine whether the evidence is sufficient to support them.

REPORT AND RECOMMENDATION  - 7

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[5] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about her symptoms and other evidence in the file. *See id.* at *6-7.

---

[5] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 679 n.5 (9th Cir. 2017).

**REPORT AND RECOMMENDATION  - 8**

### B.      Objective Medical Evidence and Physical Exam Findings

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ supported her conclusion that the medical evidence and physical exam findings did not support the severity of Petitioner's subjective complaints by citing to records from November 2019 to July 2020, wherein Dr. Sugden[6] assessed Petitioner with normal range of motion of bilateral extremities, and an examination by PA-C Pierce in September of 2019, where he assessed normal range of motion in all bilateral extremities. The ALJ also relied upon records from Dr. Perkins. (AR 24.) The ALJ contends that these records evidence normal physical findings and contain no objective assessments of Petitioner's conditions. Next, the ALJ supports her conclusion on the grounds that Petitioner did not use an assistive device at her medical appointments between January 2018 and August 2019, or between November 2019 and July 2020. And last, the ALJ discredits Petitioner's testimony on the grounds that she never sought treatment for her pain in an emergency room. (AR 24.)

Petitioner contends the ALJ mischaracterized the evidence. The Court agrees and finds the ALJ's reasons are neither legitimate nor supported by substantial evidence.

---

[6] Dr. Luke Sugden and Dr. Elizabeth Sugden evaluated Petitioner during this period. The records referred to are from both providers. (AR 24.)

**REPORT AND RECOMMENDATION  - 9**

The ALJ claims the records between January 2018 to August 2019 do not contain evidence of physical examinations assessing Petitioner's spine and rheumatic conditions, and specifically emphasizes the absence of electromyography tests supporting a lumbar radiculopathy impairment. (AR 24.) But, the record contains objective evidence of Petitioner's back pain that worsened over time. (AR 23-24.) For instance, MRI results dated February 22, 2015, revealed degenerative disc disease and disc bulges at L2-L5. (AR 429-30.) Between April 2015 and December 2015, Petitioner received bilateral lumbar facet joint injections to manage her pain. (AR 383 – 428.) Later lumbar x-ray images from September 24, 2019, noted degenerative disease, a mild dextroscoliosis of the lumbar spine with the apex of the convexity at L3-4, and severe facet arthropathy at L4-5 and L5-S1. (AR 537, 564.) Lumbar MRI results from June 26, 2020, revealed multilevel degenerative disk disease and facet arthropathy, lateral recess effacement right L2-3 and left L3-4 possibly consistent with right L3 and left L4 radiculopathy. (AR 564.) The effacement of the lateral recess at L3-4 "may affect the transiting L4 nerve root and be consistent with [Petitioner's] left leg pain." (AR 564.) The plan at that time was to try lumbar facet injections. (AR 564.)

The ALJ failed to explain why she found the lack of physical examinations assessing the severity of Petitioner's conditions during a discrete period of time between January 2018 and August 2019 more persuasive than the imaging results both before and after this period, or why the September 2019 x-ray and June 2020 MRI results were not probative of Petitioner's lumbar and radicular pain. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) ("[E]ven if the ALJ had given facially legitimate reasons

for his partial adverse credibility finding, the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy.").

Next, the records the ALJ relied upon between January 2018 to August 2019 consistently document Petitioner's subjective complaints of back and joint pain and the treatment provided. (AR 431 – 453; 501 – 530.) For instance, On January 26, 2018, Petitioner reported worsening pain with referred pain down her left leg. (AR 452-53.) Again, on July 13, 2018, Petitioner reported back pain that radiated down her left upper leg that, on her worst day, rated an 8 out of 10 level. (AR 510-11.) And later during this period of time, on November 30, 2018, Petitioner reported pain at its worst rated 7 out of 10. (AR 432.)  Petitioner's doctors treated Petitioner with opioid analgesics during this period, including Norco three times a day, to control her pain. (AR 431-453; 501 – 530.) *See Abbott v. Astrue*, 391 F. App'x 554, 560 (7th Cir. 2010) (describing hydrocodone as a "strong pain reliever"). The ALJ does not explain how the lack of physical examinations objectively assessing Petitioner's spine or rheumatic conditions supports her conclusion that Petitioner's symptoms were not as severe as alleged. Physicians during this time did not disbelieve Petitioner's complaints of pain; instead, they prescribed narcotic pain medication, and later MRI results objectively demonstrate findings consistent with Petitioner's pain complaints during this period.

Third, the ALJ's use of the time period between January 2018 and August 2019 indirectly utilizes an invalid reason to discredit Petitioner, as she testified she could not afford more aggressive treatment during this period. (AR 41.) Lack of insurance or the ability to afford treatment may explain the lack of additional objective medical evidence.

Petitioner points out that the record is replete with documentation that Petitioner was unable to do more to treat her pain between January 2018 and August 2019 due to lack of insurance and the means to pay. (AR 548, 601, 603.) The ALJ failed to reconcile her determination that the record lacked objective assessments of Petitioner's conditions with the fact Petitioner was unable to pay for more extensive treatment beyond medication management during this period of time. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (rejecting adverse credibility determination for failure to seek treatment when the record established the claimant did not have the means to do so). As soon as Petitioner acquired the means to obtain further treatment and updated physical assessments (such as an MRI and lab work), she sought additional treatment. (AR 41, 548, 550, 555, 563 – 615.)

Turning to the examination results considered normal by the ALJ, the ALJ also failed to explain why physical exam findings that Petitioner exhibited normal range of motion are inconsistent with pain. A closer examination of Dr. Sugden's and PA-C Pierce's records as a whole reveals normal range of motion is not inconsistent with pain. For instance, PA-C Pierce assessed full range of motion in all extremities, but he observed Petitioner sitting "carefully on exam table to prevent hurting her back;" she stood slowly after bending over; and, she refused to perform lumbar extension due to pain. (AR 543.) Petitioner also refused to hop on one foot during the exam because of her back pain, and she was unable to squat beyond 90 degrees. (AR 544.)

Dr. Sugden's records similarly reflect treatment for pain despite charting that Petitioner "moves all extremities well." (AR 548-549.) Notably, on July 9, 2020, Dr.

**REPORT AND RECOMMENDATION  - 12**

Sugden recorded that Petitioner had "no abnormal muscle tone" and normal reflexes, but she observed synovitis with swelling bilaterally in Petitioner's hands, wrists, and elbows consistent with Petitioner's rheumatologic conditions. (AR 588.)

Also, a chart note made by Dr. Perkins on May 15, 2020, is inaccurately described by the ALJ in support of her conclusion. The ALJ claimed Dr. Perkins described: "good range of motion of the lumbar spine upon flexion." (AR 24.) But, Dr. Perkins recorded that Petitioner could not complete the exam due to pain, and that Petitioner had "moderate range of motion with flexion but struggled in extension due to pain." (AR 600.)

Not only do the records, when considered as a whole, fail to support the ALJ's conclusion, the ALJ also failed to explain why normal range of motion in bilateral extremities is more probative of Petitioner's symptom severity than the observations of Petitioner's treatment providers. The providers consistently believed the pain complaints Petitioner made; treated Petitioner with opioids; and, observed Petitioner to be in significant pain. Further, the records reveal consistent complaints of pain, and observations of objective manifestations of pain. Accordingly, the Court does not find the ALJ's stated reason that Petitioner exhibited normal range of motion, or that her examination results were "normal," to be a clear and convincing reasons to discount Petitioner's pain testimony.

The ALJ's last two reasons – lack of use of an assistive device and emergency room treatment – are also neither legitimate nor convincing, because they do not relate to a failure to seek treatment. No doctor prescribed an assistive device to address

Petitioner's pain, nor does it appear an assistive device would have helped Petitioner with her pain. The lack of emergency room treatment is also not a specific and legitimate reason to discredit Petitioner's subjective symptom testimony. *See Barker v. Colvin*, No. 4:15-cv-00257-CWD, 2016 WL 5746356 *12 (D. Idaho Sept. 29, 2016). Rather, when Petitioner had access to insurance in 2015, she sought treatment for her pain and received facet injections to alleviate pain. Even when she did not have insurance, Petitioner sought care and was treated with opioid pain medications. When Petitioner again had insurance coverage, she underwent further workup including an MRI in 2020. (AR 606.) Her treatment providers in June of 2020 were considering treatment with facet injections due to the "fairly severe" pain at L4 and L5. (AR 569.)

Based upon the above discussion, the Court finds the ALJ's reasons for discrediting Petitioner's symptom testimony about the disabling effects of her pain are not supported by substantial evidence in the record, and that the ALJ failed to consider the record as a whole.

### C.   Daily Activities

An ALJ may discount a claimant's testimony based on daily activities that either contradict her testimony or that meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639. Petitioner contends the ALJ erred by mischaracterizing Petitioner's activities, and failing to consider how her activities translate into an ability to sustain work activity equivalent to a full-time work schedule. Respondent counters that there is sufficient evidence in the record to support the ALJ's determination regarding the intensity and persistence of Petitioner's subjective pain symptoms such that she is not

precluded from all full-time work. The Court disagrees, and finds the ALJ erred, as explained below.

The ALJ characterized Petitioner's daily activities not only as "robust," but also as inconsistent with a disabling musculoskeletal or rheumatic impairment. The ALJ discredited Petitioner's testimony about the severity of her pain and fatigue, because Petitioner was able to prepare meals; perform household chores; work as a medical office cleaner; visit her friends weekly; shop in stores; drive; and attend church. (AR 24.) The ALJ noted also that medical providers documented that Petitioner was able to work, clean houses, and tend to her large garden. (AR 24-25.) The ALJ determined this evidence supported a finding Petitioner could engage in full time work at the light exertional level, which requires the ability to stand or walk, off and on, for a total of approximately 6 hours in an 8-hour workday, with sitting allowed intermittently during the remaining time. SSR 83-10.

Upon review of the record, the Court finds the ALJ's conclusions are not supported by the record and fail to provide both clear and convincing reasons for rejecting Petitioner's subjective complaints. Here, the ALJ's assessment of Petitioner's daily activities is not based upon a fair assessment of the record. For instance, Petitioner's Adult Function Report, completed on August 11, 2019, indicates Petitioner's meals consist of simple, easy to prepare dishes like eggs, oatmeal, frozen dinners, and occasionally, baked chicken or hot dogs. She indicated her husband helped her prepare these meals. (AR 307.) Housework consisted at that time of light cleaning and laundry,

which she indicated she could do up to two hours each day, provided she took time to rest in her recliner and additional time to complete these chores. (AR 306 – 07.)

Petitioner's work as a medical office cleaner occupied two hours each evening five days a week. (AR 43, 309). She was able to do the job because she had no set hours, she could take as long as she needed to complete the job, and she could sit and rest throughout. (AR 46.) She described her other activities as "small walks, T.V., church, talking with friends, and reading." (AR 309.) She indicated she went to church once a week, and visited one to two times each week with friends. (AR 309.) Most days, however, she described as spending in her recliner, because prolonged standing, sitting, and kneeling hurt her back, legs and feet, and the arthritis in her back and hands hurt. (AR 305 – 06, 310.)

Petitioner's Adult Function Report provides information about her abilities consistent with her testimony at the hearing. For instance, she indicated in the function report that she could lift approximately ten pounds or less, and that she had trouble squatting, bending, walking, sitting, standing, and using her hands. (AR 310, 47.) At the hearing, Petitioner testified she could walk about fifteen minutes before needing to sit, that standing longer than five minutes was difficult, and that after ten minutes sitting she would need to stand. (AR 47, 50.) She testified also that she often experienced flare-ups, especially in cold weather. (AR 48.) A typical day consisted of making coffee, putting a heating pad on her back while lying in her recliner, doing some light stretching afterward, and then trying to complete some household chores, which required her to spread them

out over the course of a week. (AR 50 – 51.) She testified that she takes breaks

throughout the day. (AR 51.)

The ALJ correctly noted that Petitioner potentially described being more active to

her treatment providers. (AR 25 (citing Exs. 3F/12, 22, 24, & 4F/15)) However, the ALJ

failed to note that the referenced chart notes were dated well before Petitioner completed

the Adult Function Report in August of 2019, suggesting her activity level declined over

time, and the ALJ failed to consider the record (or the individual treatment notes

themselves) as a whole.

For instance, on January 26, 2018, Petitioner reported working at the Idaho Youth

Ranch, but because of the physically demanding work, she suffered back pain every night

after work. (AR 452.) She described her worst pain at a level eight or nine out of ten, and

that it was worsening. (AR 452.) By March 23, 2018, Petitioner reported she no longer

worked for the Idaho Youth Ranch, and instead was working as a janitor at the schools in

the district while cleaning houses on the weekends. (AR 450.) She indicated she had

"adequate control" of her back pain with "3x/day dosing of the Norco." (AR 450.) On

July 13, 2018, Petitioner reported that her work cleaning houses kept her active, and she

had a "large garden that she is working in." (AR 510.) However, bending over was

"difficult," and she could not work or complete household chores without the use of

Norco and Flexeril daily. (AR 510.) Petitioner reported on September 7, 2018, that she

was experiencing significant pain, but she was able to work two days a week at the

schools, and do housekeeping work the rest of the week. (AR 435 – 436.) Her pain was

controlled with opioid pain medication, although Petitioner reported that sometimes her pain level reached an eight out of ten. (AR 437.)

By 2019, however, objective imaging reports indicated Petitioner's condition had worsened, and she was no longer as active. As previously discussed, a September 24, 2019 lumbar x-ray documented significant disc height loss at L3/4, facet arthropathy, and mild dextrocurvature at L3. (AR 537.) By June 29, 2020, Petitioner reported worsening pain, with radiation into the left anterior thigh, such that she was having a hard time being up and active. (AR 563.) MRI results revealed facet arthropathy and lateral recess effacement consistent with right L3 and left L4 radiculopathy. (AR 563-64.) At the June 29, 2020, office visit, her treatment provider recorded that Petitioner exhibited slow movements; difficulty going from sitting to standing; difficulty standing erect; flexion to about 45 degrees very slowly; positive lumbar facet loading maneuvers; and that she walked with a slow, guarded gait. (AR 564.) She was also noted to have a sitting straight leg raise strongly positive on the left, and neurologic weakness in the lower extremities. (AR 568 – 69.) On July 9, 2020, her treating provider noted "synovitis with swelling, redness MCPs 3,4,5 bilaterally. Wrist and elbows, DIP, PIP's ok." (AR 588.)

Put in context, Petitioner's activities were hardly "robust," and they do not equate to the physical demands of light work on a sustained basis. Petitioner could do certain activities intermittently, with significant rest and accommodation. Her medical records demonstrate that her condition progressively worsened, and she experienced an increase in pain and corresponding decrease in ability level. *See Garrison v. Colvin*, 759 F.3d 995, 1015-16 (9th Cir. 2014) ("ALJs must be especially cautious in concluding that daily

activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."). Without an explanation of how these activities translate to the ability to maintain full-time employment at the light exertional level, the Court cannot sustain the ALJ's adverse findings regarding Petitioner's subjective symptom testimony.

The Court concludes the ALJ erred by failing to provide clear and convincing reasons to discount Petitioner's testimony concerning the limiting effects of her pain.

### 2.      Physician Opinion

Petitioner contends the ALJ failed to properly evaluate the opinion of PA-C Steven Pierce, who conducted an orthopedic examination on September 24, 2019. Pet. Brief at 18. (Dkt. 18.) Respondent maintains the ALJ properly considered the medical opinion and explained the bases for her evaluations of the opinion evidence as required by the applicable regulations. Resp. Brief at 9. (Dkt. 22.) The Court disagrees.

### A.      Legal Standard

The Commissioner revised the regulations applicable to the evaluation of medical evidence for disability applications filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Because Petitioner's application was filed after March 27, 2017, the application is subject to the revised regulations. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); *see, e.g., Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993).

Under the revised regulations, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources according to the following factors: supportability; consistency; relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examinations); specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5). The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Supportability and consistency are the most important factors and, therefore, the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). The supportability factor looks inward at the medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. §§ 404.1520c(c)(1); 16.920c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s)…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)…will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

The ALJ needs to address only the remaining factors — treatment relationship, specialization, and any other factors — when deciding among differing yet equally

persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)-(3); 416.920c(b)(2)-(3) (Where "two or more medical opinions…about the same issue are both equally well-supported…and consistent with the record…but are not exactly the same."). The ALJ may address multiple opinions from a single medical source in one analysis. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation).

Under the revised regulations, the ALJ is required to "articulate ... how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b); 416.920c(b). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Carmen Claudia S. v. Saul*, 2021 WL 2920614, at *8 (C.D. Cal. July 9, 2021) (quoting *Robert S. v. Saul*, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021)). "In sum, the Commissioner must explain his [or her] reasoning and specifically address how he [or she] considered the supportability and consistency of the opinion, and his [or her] reasoning must be free from legal error and supported by substantial evidence." *Id.* (quoting *Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021)) (citations omitted). With these regulations and considerations in mind, the Court will proceed to its analysis.

## B. PA-C Steven Pierce

PA-C Steven Pierce obtained diagnostic x-ray imaging of Petitioner's spine on September 24, 2019, in conjunction with completing an orthopedic examination. (AR 537

– 44.) As noted previously, x-ray imaging revealed significant disc height loss at L3/4, facet arthropathy at L3/4, L4/5, and L5/S1. The radiologist noted that an MRI would better characterize the degenerative disc changes in the lower lumbar region. (AR 537.) PA-C Pierce documented that Petitioner exhibited good range of motion of her shoulders, elbows, wrists, knees, hips, ankles, and cervical spine. (AR 539 – 40, 543.) She was able to do forward flexion, but not extension, of her lumbar spine. (AR 540.) Her bilateral lower extremity muscle strength was noted as 5/5. (AR 540.) PA-C Pierce charted Petitioner's subjective complaints consistent with what has already been discussed above. For example, Petitioner reported difficulty standing, sitting, and performing daily activities. (AR 541.) Petitioner was observed sitting carefully on the exam table due to pain, standing slowly after bending over, refusing to extend her lumbar spine, and reporting pain in her lumbar area with seated straight leg raise. (AR 543.)

Based on x-rays and examination, in PA-C Pierce's opinion, Petitioner would be expected to have "limitations with prolonged/repeated bending, prolonged/repeated stooping, heavy or repeated lifting/carrying, and exposure to cold. Limitations/restrictions would be related to debilitating pain with prolonged, repetitive, or overuse." (AR 544.)

The ALJ found the opinion by PA-C Pierce regarding Petitioner's limitations with bending, stooping, and lifting "vague without specifying the frequency" in which Petitioner could engage in these activities throughout an 8-hour workday. (AR 26.) The ALJ concluded that PA-C Pierce's physical examination findings appeared inconsistent with a more restrictive RFC, because the physical exam findings were "normal." (AR 26.) The ALJ reasoned that the normal range of motion, full motor strength, and ability to

have a full range of motion of the spine upon flexion rendered PA-C Pierce's opinion consistent with a light RFC. The ALJ commented also that Petitioner's "vast activities of daily living" undermined PA-C Pierce's opinions.

Respondent argues that the Court can reasonably infer that PA-C Pierce's findings were consistent with the exertional requirements of light work. However, the Court cannot engage in such speculation. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The Court finds first that the ALJ did not adequately address whether PA-C Pierce's opinion was consistent with the other evidence of record, as required by the applicable regulation. The regulation provides that a medical opinion which is more consistent with evidence from "other medical and non-medical sources" will be more persuasive. 20 C.F.R. § 404.1520c(c)(2). Absent from the ALJ's determination is any discussion or citation of "other medical and nonmedical sources" and whether evidence from those sources is consistent with PA-C Pierce's opinion. *Mascarenas v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00641-PHX-SPL, 2022 WL 2448279, at *4 (D. Ariz. July 6, 2022)

Yet, PA-C Pierce obtained x-rays documenting significant degenerative changes at the lower lumbar level, and he examined MRI results from February of 2015. (AR 541.) A later MRI result dated June 29, 2020, confirmed degenerative changes in Petitioner's lumbar spine. Treatment notes from 2019 and 2020 document Petitioner's consistent reports of pain. Clinical examination findings in June of 2020 revealed positive straight leg raise, and neurologic weakness in the lower extremities. The ALJ did not discuss any of this evidence in the context of evaluating PA-C Pierce's opinion. It therefore appears

the ALJ completely ignored the consistency factor, because she did not explain why PA-C Pierce's medical opinion is inconsistent with the evidence as a whole. The ALJ's failure to address the consistency factor prevents a full and fair review of the ALJ's decision by the Court.

It appears also that the ALJ found PA-C Pierce's opinion unsupported by examination findings, although she did not reference "supportability" specifically. Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant…objective medical evidence." 20 C.F.R. § 404.1520c(c)(1). The supportability factor goes directly to "whether, or to what extent, the source explained his opinion or conclusions by providing or citing objective supporting evidence." *Mascarenas v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00641-PHX-SPL, 2022 WL 2448279, at *5 (D. Ariz. July 6, 2022) (citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022)).

Here, the ALJ found PA-C Pierce's examination findings regarding intact strength and range of motion did not support his opinion regarding ability to bend, stoop, lift, and carry. But the ALJ failed to acknowledge the x-ray results, and PA-C Pierce's comments that the x-ray images, Petitioner's statements, and PA-C Pierce's physical exam (wherein he noted pain behaviors) supported a diagnosis of degenerative disc disease of the lumbar spine. (AR 544.) Nor did the ALJ explain why full range of motion and strength contradict subjective reports of pain with that motion, especially in light of PA-C Pierce's notation that Petitioner did not exhibit symptom magnification during the exam. (AR 544.) And last, the ALJ mischaracterized PA-C Pierce's examination findings regarding

**REPORT AND RECOMMENDATION  - 24**

flexion, which would arguably support PA-C Pierce's opinions regarding bending, stooping, and lifting. Contrary to the ALJ's assertion, Petitioner did not have a full range of motion of the spine upon flexion. Rather, Petitioner could flex forward 90 degrees, and could not extend at all due to pain. (AR 540.) PA-C Pierce observed also that Petitioner stood slowly after bending over and sat carefully on the examination table to avoid hurting her back. (AR 543.) He charted that Petitioner would not hop on one or two feet for fear of hurting her back, and she could not squat beyond 90 degrees. (AR 544.)

Finally, the ALJ referenced Petitioner's daily activities. As explained above, however, the Court finds the ALJ erred in her evaluation of the same. Further, the ALJ did not explain how PA-C Pierce's opinion, which did not comment upon Petitioner's ability to walk, stand, or sit, was inconsistent with Petitioner's testimony concerning her limitations in these areas. Yet, the ALJ concluded PA-C Pierce's opinion was consistent with the demands of light work, which require the ability to stand or walk, off and on, for a total of approximately 6 hours of an 8-hour workday, and sit intermittently for the remainder. SSR 83-10. PA-C Pierce did not provide any opinion regarding Petitioner's abilities in these three functional areas.

In sum, the ALJ did not articulate how she considered either the consistency or supportability factors in reaching her findings. The Court is constrained to review the reasons the ALJ asserts, *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015), and finds the ALJ's conclusion regarding PA-C Pierce's opinion to be in error.

## CONCLUSION

The Court concludes the ALJ erred in her evaluation of Petitioner's subjective symptom testimony and PA-C Pierce's opinion. As a result, the ALJ's RFC determination is not supported by substantial evidence. The Court will recommend that this matter be reversed and remanded for further proceedings consistent with this opinion.

## <u>RECOMMENDATION</u>

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1)      The Petition for Review (Dkt. 1) be **GRANTED**;

2)      The action be **REVERSED and REMANDED** to the Commissioner for further proceedings consistent with this opinion; and that

3)      The remand be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: August 1, 2022

Honorable Candy W. Dale
United States Magistrate Judge